The calendar will hear the first case, 344 individuals versus James W. Giddens. Morning, I please the Court. Rick Skorola for the appellants. If I may, there are a great many issues fully briefed, thoroughly briefed by both sides. If you permit me to just take a moment to discuss what I'd call something new, and there's a reason for that. The trustee has argued vehemently against the high standard in the MBNA case as to when an arbitration request can be denied. And in part, the trustee has done that based on the argument that, well, the MBNA case involved a situation where the deal was over, the case was over, it wasn't going to affect anything, unlike this case, which has huge future implications. Since this matter was submitted by way of briefs, I'd refer the Court to the LBII docket numbers 13,345 from April 28, 13,765 from July 29. Quote, the LBII estate has entered a phase of substantial completion. That's the trustee speaking. The only material matters involve a discrete set of claimants disputing the trustee claims determinations. Before this and appellate courts. When you read the rest of what's in there, we are more than half of what there is. This group of 344 that I represent and another 40 in a similar situation represent more than half of what's being litigated, and there are only about 30 or 40 claims left. Do you think that compelling arbitration would not disrupt the bankruptcy proceedings because largely what's left is your clients? It matters for this reason, Your Honor. One, as I said, the MBNA standards are what I think you need to apply, and they are strong. They require a particularized look at the particular claims, or in this instance defenses, because it's the trustee's claim to subordinate. We have five defenses asserted. And you do it on a case-by-case basis according to your own law and the way it's applied in the courts below. It matters here that this bankruptcy is almost over because there are no, there are no, this isn't a reorganization where a Chapter 11 reorganization is being delayed. This isn't a situation where money's being held up because interim distributions have been made and the lion's share of money has gone out. Leaving aside that arbitration will probably be faster when you're going back and beginning to litigate because we haven't even begun to discover it. But there's a second part of it, and why I'm focusing on the MBNA standard and why it shouldn't be disregarded for the trustee said, which are in conflict with the idea that this case is almost over. The second part of it is, in the particularized inquiry here, you've got what is, in our view, I think the trustee's view, a unique arbitration clause. It's a matter of first impression. You do not have any case before you where the arbitration clause in issue said, what we will arbitrate is not everything under this contract or any disputes the parties may have, but we will arbitrate the possibility of subordination, which means 99 and 99% certainly only bankruptcy. This is the only case where an arbitration clause has said, if we get to this place. Does it make sense that the question of subordination should be decided by FINRA arbitrators and not the bankruptcy court? Yes, and the reason is, and let's go to that. You keep speaking over me, by the way. I'm sorry. That's not appropriate. Go ahead. I didn't mean that. Go ahead. You've done it three times now. I just don't understand. But go ahead. With regard to the subordination point, as I understand what I think Your Honor is referring to, it's the argument that's been discussed in Judge Ramos' opinion, argued by the trustee that subordination in itself is a kind of matter that deserves special treatment, and there's a heavy weight against arbitration. Subordination is one of the key issues in any bankruptcy, and is it an abuse of discretion for the bankruptcy court to decide that that's not a matter that should be decided by FINRA arbitrators, but it should be decided by the bankruptcy court in the context of the entire proceedings? Is that an abuse of discretion? I'd say it's not even abuse of discretion. It's simply wrong, and it's for this court to review that de novo, and here is my understanding of what the arguments are on the point that this is. Generally, it's called, I guess, a priority dispute, whether it's subordination, whether it would be the same, whether it was a claim priority issue, a secured claim, at least as I understand that that argument is made. However, what the trustee does is act under Section 510A of the Code, which says, if there's contractual subordination, that's going to be determined according to the generally applicable laws governing contracts of that type. There's no unique, specific bankruptcy issue there, so that's one part of the answer. The entire theme of the MBNA case, the Mintz case, I think all of the law in this area is whether there is a conflict with bankruptcy code, bankruptcy law, bankruptcy policy, and the district judge here said, well, 510A is a bankruptcy statute, but the statute just refers the decision-maker back to general legal principles, which here are going to be contractual principles. There's a second point to be made, and I apologize for speaking over your honor. I didn't mean to. Short amount of time and a lot to cover. I really do apologize, but it's a, in this will go to these claimants of their subordination. It is the same result as if this was a claim dispute, meaning a claim validity where the issue where the trustee was saying, we deny the validity of the contract under which you're seeking to be paid, filing a proof of claim. Now, in the cases they cite and the way they argue it, if it's simply a claim dispute, meaning the validity of the claim, then this heavy bias, if you will, for lack of a better word, against arbitration, they wouldn't argue applies. It's only because it's the priority question. I'm sorry. So you're saying that it was an abuse of discretion and it was abuse of discretion because it was incorrect as a legal matter or just not within the range of permissible decisions? I'm saying you could decide it is an abuse of discretion, but you do not need to apply an abuse of discretion standard because I believe you review that determination, the gatekeeper question of whether or not there's a severe conflict with bankruptcy lawyer. I believe you review, excuse me, you review that de novo. And I say that for the following reasons. The U.S. Lions case, I can see some language in there that would lead one to a different conclusion. If you look at the more recent MBNA case from this court and the way it's applied in the district courts and in the bankruptcy courts itself, the question of whether there is a severe conflict with bankruptcy law, that's a gatekeeper question that is a matter of law, not an abuse of discretion question. And the Mintz case from the Third Circuit lays out an analysis that says that crisply, much more crisply than anything I can point to. And I think the analysis that's no severe conflict, even though this has to do with subordination and priority, which is at the essence of the bankruptcy court's function. There is no severe conflict because the determinations that have to be made by an arbitrator, by a court, by anyone here, are all matters of nothing having to do with a question of bankruptcy qua bankruptcy law. There is no question that is going to be decided that is interpreting the code, enforcing or applying a particular provision of bankruptcy law. I mean, let me go down. I have a few minutes left, I think. No, no. No, I don't. Okay. I've reserved a few and I'll try to do it. You have three minutes for rebuttal. Okay. We'll hear from the other side. Good morning, Your Honors. May it please the Court. Jim Fitzpatrick for the Lehman Trustee. First, Your Honors, if I could address the issue with the Trustee's recent report noting that the bankruptcy, the liquidation is nearing its completion. That's very different from the situation in the MBNA case. In the MBNA case, the bankruptcy was concluded and the Court made the finding that, in fact, the underlying dispute was a purported class action brought by the debtor. If the debtor were to recover, those funds would not even have come into the estate. And so, as this Court correctly noted, that had essentially no connection to the issue of whether or not these claims are subordinated does affect the entire estate and, in fact, affects the rights of all of the other creditors to receive a distribution prior to any subordinated creditor. So, the issue here, while it is true that as a chronological matter, we are hopefully nearing the end of the liquidation, the situation is very different from MBNA because the entire estate is, in fact, affected by a ruling on subordination of these claims. Mr. Fitzpatrick, if subordination is the basis of the conflict, is there really a bright-line rule, in your view, that when there is either a bankruptcy and subordination is at issue in the context of arbitrability, that there is just a bright-line rule that one will not allow the arbitration to proceed, or is it a test that has to do with size and complexity? So, that's one question. The second is, in the appendix at page 1196, there's no indication that the bankruptcy court discussed the word severe conflict. She recognized certainly a conflict and recited several bases for that, but do you believe that she appropriately applied the standard of severe conflict? Yes, Your Honor. So, to address your questions in order, first of all, on the question of whether there's a bright-line, I've candidly thought a lot about that. I think, I don't think I want to say the words bright-line because this Court in MBNA has clearly said it's a case-by-case analysis, but when you have an issue like subordination, including contractual subordination, as this Court specifically addressed in the Best Products case in the context of contractual subordination under 510A, called it an integral and historic bankruptcy function, said it's hard to imagine a function more at the level of a bankruptcy code. Whether it's a bright-line or not, I, I can't, I actually can't imagine a situation in which a subordination, subordination issue like this would be appropriately sent to arbitration. It's possible that there's a fact pattern I'm not imagining, but I certainly do think that under this Court's precedent in Best Products, a 510A dispute doesn't belong in arbitration. And, and of course, as the lower courts noted, that's only one issue. There's also the issue of the identity of the debtor and the effect of a rejected executory contract, which also way further we'd submit in favor of bankruptcy court and ultimately district court and potentially Second Circuit adjudication rather than arbitration. Your Honor, with respect to the second, your Honor's second question, I do believe the bankruptcy court, despite not using the term severe, I, I, I confess I hadn't noticed that. I'll take your Honor's word for it without reviewing the appendix. But without using that word, I think the essence of the Court's determination was very clear that Her Honor was considering this as severe conflict. She noted, in fact, the Best Products case and just how very central issues of subordination are to the code and made the finding that sending that issue as well as identity of the debtor and executory contract issues, which she stated colloquially, but I, colloquially, but I think accurately are a bankruptcy thing, those, those all weigh heavily in favor of court adjudication and not arbitration. The, the issue, it's also important to note I think, Your Honor, is that the issue in this case is one of congressional intent and I think the Supreme Court made that clear in the Shearson v. McMahon case where it noted, of course, the Federal Arbitration Act's mandate in favor of arbitration, but also noted that that can be overridden by contrary congressional command and noted that Congress's intent can take the form of an inherent conflict between arbitration and the statute's underlying purpose. The reason I highlight that it's an issue of congressional intent is first to respond to this issue that there was a lot of, a lot of briefing on about the purported narrowness of the arbitration clause at issue or the narrowly tailored nature of the arbitration clause. I'd note as a, as an initial matter that we don't agree with that interpretation of the arbitration clause. I actually think it's better read to apply to all of Section 9, which is titled Subordination Provisions, many of which deal with the operations of an ongoing broker-dealer, a non-insolvent broker-dealer, and the, and the applicability of securities regulations to that, which it would make sense to arbitrate for an, for an operating broker-dealer by then the New York Stock Exchange, now FINRA. So I, I think the arbitration clause is broader than that, but again, more to the point, it really doesn't matter how much the parties wanted to arbitrate or how badly they wanted to arbitrate, even if it was just in the interest of the bankruptcy, because the party's intent doesn't matter here other than for the threshold determination that the on that, the issue of whether the Arbitration Act's mandate is overridden here is an issue of congressional intent between the Federal Arbitration Act and the Code. And as to whether or not that congressional intent is present, this Court has also already addressed that issue in the U.S. Lines decision, and has held that in the bankruptcy setting congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements, where the policy in favor of arbitration is even greater than it is here with a domestic arbitration agreement. Nonetheless, this Court has held that congressional intent is there to allow bankruptcy courts to enjoin arbitration. The Fourth Circuit in the White Mountain case has similar language. Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts. Arbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon an arbitrator ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case. But doesn't that argument actually suggest that whenever you've got a conflict between the FAA and the Bankruptcy Code, the Bankruptcy Code will always win? And that, in fact, the law has developed differently. First, you look to see if there's a conflict between the two, and even in the event of a conflict, you have to ask the conflict severe. So otherwise, it would be the case going back to our earlier question about subordination, there'd be a bright-line rule, but similarly, even putting aside subordination, one of the points that the bankruptcy court raised below and focused so much upon was priority. And priority is the central aspect of any bankruptcy proceeding, particularly in a liquidation, and as a result, one would think that relying upon priority alone would not get you to the level of a severe conflict. Yes, so first of all, if the decisions hadn't gone any further than what I just read, sure, they would suggest that, but of course this Court's precedent does make clear that the question then becomes, okay, there's Congress intent is there to allow the bankruptcy court to enjoin arbitration, but when? When is that done? And it's clear that this Court has applied a two-part test for that. The first part is whether the matter is core, and the second is whether or not there's a severe conflict. And here, as we've laid out in the briefing as both courts, we'd submit correctly found below, there's no question that the matters are core. The issue of subordination, the issue of the identity of the debtor, and the effect of rejection of an executory contract. But similarly, sending those matters to an arbitrator would present a severe conflict with the purposes of the bankruptcy code because, for one reason, as the bankruptcy court focused on below, Congress has decreed that differently situated creditors be treated differently and that's a core function of the bankruptcy court to make that determination. Section 507 lays out the priority of claims. 510A makes contractual subordination enforceable in bankruptcy. There's a statute that requires the trustee to take that into account when making the determination, so we'd submit those code sections all make clear that Congress intended issues like this that are, again, as this court has held historic and integral bankruptcy court functions, to be determined by the bankruptcy court and not an arbitrator. And that would be a severe conflict to send it anywhere else. Let me just ask, circling back to something that Mr. Scarola was saying and that you led off with, which is the current state of play. One thing that the bankruptcy court really focused on also was the complexity of the action and the six years that the estate actually, the proceeding had been underway. To what extent are those concerns now lessened? I don't think they are lessened, Your Honor, because when you have an issue like subordination, what you're really addressing, again, is the right of all other general creditors who are not subordinated to receive distribution in full to the extent possible before any of the subordinated creditors receive a distribution. And the general estate is still open and there's still many thousands of general creditors who this issue will affect. And so, while again, we are optimistic that we are moving toward the end of the liquidation, that's not impacted here where this case still impacts the entire general estate. Thank you, Your Honor. Thank you. We'll hear the rebuttal. If I may go to the question of what's actually going to be decided below the level of this is a priority or a subordination dispute, there are five defenses that our clients are asserting. None of them invoke or require a determination of a bankruptcy code provision or a bankruptcy law principle or invade the province of bankruptcy. But let me try to go through them quickly. It's only a few minutes. First, they're all set forth in the briefs, but a couple of them deserve some special attention. There are provisions in the contract that say Lehman had to write the ship, as we've put it in a different set of papers to Judge Ramos on a rule section 157 motion, that if the net capital requirements as dictated by the SEC are breached, Lehman had to take certain actions that would protect our clients. Now, the Valucas report, which I hope none of you ever have to read for your sanity's sake, as long and complex as it is, makes a strong case that these net capital requirements were breached daily and, as a consequence, there would be a material breach. That's a determination that has nothing to do with bankruptcy law. That's an interpretation of the contract, and it's a huge issue. The second issue is the one that's gotten so much attention is the use of the word advisedly in certain places, successor, in the party's contract. The use of the word successor, as we argue it, does not apply I'm sorry, it requires the conclusion that if there is a corporate successor under New York State law to Shearson Lehman, the party that made the contract in 1985, the subordination provisions don't reach any future iterations of the company. Now, the bankruptcy judge said after in the decision from the bench, that's going to make me decide the identity of the debtor, and I'm sorry, but that is just not the case. There's no question who the identity of the debtor is. The identity of the debtor is Lehman Brothers, Inc. There's no issue about that. The issue that's presented is a contract interpretation question within the four corners of that 1985 agreement. What did those parties do to say or not say, if we're wrong, this subordination clause has limits. It doesn't affect anything else in the bankruptcy. It doesn't affect anything about what's been done in the last eight years in the bankruptcy. It's simply determining what did the parties intend to be the reach of the subordination clause and that's a matter of contract law that courts I'm looking at the appendix, page 856, and your second defense really focuses on this issue, but it really digs down into whether or not there's a material difference between Shearson and the current entity, which strikes me as precisely within the four corners of identifying the debtor to the extent that any of the debts would precede the current entity. It's not identifying the debtor. It's identifying for the purposes of the subordination clause whether, or it's assessing whether, there are three lines of cases in corporate successorship. None of them mean it's a different corporate entity for purposes of the debtor in the context of this bankruptcy. Successor is a term of art, and as it's used in each of those three lines of cases, and I think we would prevail under each, it is simply a determination of whether or not there was a substantial enough change in the constitution of the debtor  For these purposes, whether Shearson and LBI are the same entity? Whether they are the same entity, for what purpose? For purposes of subordination? For purposes of the contractual subordination clause, yes, but only for that purpose. In any other respect, it should be resolved in the bankruptcy proceedings? It should not, because a court or an arbitrator deciding that issue is going to be looking to the question of what does the word successor mean under New York State law? There's no bankruptcy principle involved in that. It doesn't implicate other broad issues. There aren't a horde of other creditors here, or potential creditors saying my rights have changed because of this. It's entirely peripheral to the bankruptcy, which is almost concluded. It is a contract question. It is what was the extent of what those parties... Thank you. We'll reserve position. Thank you.